

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.   CASE NO. 6:12-cr-47-Orl-36DAB

ALLAN NEY CACERES
a/k/a Allen Caceres Truesdale

**PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Robert E. O'Neill, United States Attorney for the Middle District of Florida, and the defendant, ALLAN NEY CACERES, a/k/a Allen Caceres Truesdale, and the attorney for the defendant, Adam Tanenbaum, mutually agree as follows:

A.   **Particularized Terms**

1.   Count Pleading To

The defendant shall enter a plea of guilty to Count Two of the Indictment. Count Two charges the defendant with being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

2.   Maximum Penalties

Count ~~One~~ Two carries a maximum sentence of ten years' imprisonment, a fine of $250,000, a term of supervised release of not more than three years, and a special assessment of $100, which is due on the date of sentencing. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of

Defendant's Initials _AC_                    AF Approval _____

the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3. Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count Two are:

First: That the Defendant knowingly possessed a firearm and/or ammunition in or affecting interstate and/or foreign commerce, as charged; and

Second: That before the Defendant possessed the firearm and/or ammunition the Defendant had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year, that is, a felony offense.

4. Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts One and Three, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

Defendant's Initials AC

6. Restitution to Persons Other Than the Victim
of the Offense of Conviction - Agreed Upon Amount

Pursuant to 18 U.S.C. §§ 3663(a)(3) and/or 3663A(a)(3), defendant agrees to make restitution to Lake Underhill Animal Hospital in the amount of $2,781.25.

7. Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials AC

3

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b), the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9. Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

10. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), whether in the possession or control of the United States or in

Defendant's Initials _AC_

the possession or control of the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the following: a Ruger 9mm pistol (model #95DC, serial #31189498) and eight 9mm rounds of ammunition. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the court make a determination that the government has established the requisite nexus between the property subject to forfeiture and the offense to which defendant is pleading guilty and enter a preliminary order of forfeiture. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture shall be final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

The defendant agrees to forfeit all interests in the properties described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a

Defendant's Initials __AC__

5

consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant further agrees to take all steps necessary to locate property and to pass title to the United States before the defendant's sentencing. To that end, defendant agrees to fully assist the government in the recovery and return to the United States of any assets, or portions thereof, as described above wherever located. The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

The defendant agrees that the United States is not limited to forfeiture of the property described above. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Defendant's Initials  AC

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

11. <u>Abandonment of Property - Firearms and Ammunition</u>

The United States of America and defendant hereby agree that any firearm and/or ammunition as defined in 18 U.S.C. § 921, seized from defendant and currently in the custody and/or control of the Bureau of Alcohol, Tobacco and Firearms, were properly seized and are subject to forfeiture to the government according to 18 U.S.C. § 924(d) and/or that the firearms and ammunition constitute evidence, contraband, or fruits of the crime to which he has pled guilty. As such, defendant hereby relinquishes all claim, title and interest he has in the firearms and ammunition to the United States of America with the understanding and consent that the Court, upon approval of this agreement, hereby directs the Bureau of Alcohol, Tobacco and Firearms, or other appropriate agency, to cause the firearms and/or ammunition described above to be destroyed forthwith without further obligation or duty whatsoever owing to defendant or any other person.

As part of the plea agreement in this case, defendant in this case hereby states under penalty of perjury that he/she is the sole and rightful owner of the property, and that defendant hereby voluntarily abandons all right and claim to a Ruger 9mm pistol (model #95DC, serial #31189498) and eight 9mm rounds of ammunition.

Defendant's Initials  AC

7

B. **Standard Terms and Conditions**

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987), including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

Defendant's Initials  AC

8

3. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

4. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by

Defendant's Initials AC

9

the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

    5.    Defendant's Waiver of Right to Appeal and
<u>Right to Collaterally Challenge the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government

Defendant's Initials _AC_

exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

6. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if

Defendant's Initials  AC

any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9. <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials AC

12

10. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

11. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this __18__ day of May, 2012.

_____
ALLEN NEY CACERES
a/k/a Allen Caceres Truesdale
Defendant

ROBERT E. O'NEILL
United States Attorney

By: _____
Daniel C. Irick
Assistant United States Attorney

_____
Adam Tanenbaum
Attorney for Defendant

_____
Carlos Perez-Irizarry
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials __AC__

13

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 6:12-cr-47-Orl-36DAB

ALLAN NEY CACERES
 a/k/a Allen Caceres Truesdale

**PERSONALIZATION OF ELEMENTS**

1. On September 15, 2007, in Orange County, Florida, in the Middle District of Florida, did you knowingly possess a firearm and ammunition in or affecting interstate and/or foreign commerce, as charged, that is a Ruger 9mm pistol (model #95DC, serial #31189498) and eight 9mm rounds of ammunition?

2. Before you possessed the firearm and ammunition, had you been convicted in a court of a crime punishable by imprisonment for a term in excess of one year, that is, a felony offense?

Defendant's Initials _AC_

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 6:12-cr-47-Orl-36DAB

ALLAN NEY CACERES
a/k/a Allen Caceres Truesdale

## FACTUAL BASIS

On September 15, 2007, in Orange County, Florida, **ALLAN NEY CACERES**, a/k/a Allen Caceres Truesdale **("CACERES")** got into an automobile accident that resulted in his transport to the hospital. Orlando Police Department (OPD) officers responded to the scene of the accident, and later interviewed **CACERES**. When the officers responded to the scene of the accident, they conducted an inventory of the items in **CACERES'** car, and discovered a gun belt and a loaded, black, semi-automatic handgun, particularly a Ruger 9mm pistol (model #95DC, serial #31189498) and eight 9mm rounds of ammunition. When the officers later interviewed **CACERES** at the hospital and asked about the handgun, **CACERES** identified himself as a Federal Air Marshal. When asked about his federal identification, **CACERES** claimed that it was in the car; however, no identification was ever found in the car. The officers then told **CACERES** that he could pick up the handgun at OPD by showing his federal law enforcement identification.

On September 20, 2011, agents located the firearm recovered from **CACERES'** car in the inventory of the Orange County Sheriff's Office (OCSO) awaiting destruction.

Defendant's Initials _AC_

The firearm and a magazine had been transported from OPD to the OCSO for destruction, but had been stored for a number of years for **CACERES** because **CACERES** had claimed to be a Federal Air Marshal. Of course, **CACERES** never picked up the handgun from OPD because **CACERES** was a convicted felon, was not a federal law enforcement officer, and had never been a federal law enforcement officer. In particular, on September 14, 1995, **CACERES** had sustained a conviction for two counts of forgery in the first degree in the Superior Court of DeKalb County, Georgia, Case Number 95-cr-3602.

This case came to the attention of the FBI several years later, because on April 17, 2011, OPD responded to the Lake Underhill Animal Hospital concerning a complaint by an employee. In 2007, **CACERES**, identifying himself as "Allen Truesdale," came into the Animal Hospital and requested care for his dog. **CACERES** said that he was a Homeland Security officer working K-9 at the airport. **CACERES** had what appeared to be a badge around his neck and carried a handgun, specifically the Ruger 9mm pistol (model #95DC) that OPD recovered in the car accident on September 15, 2007. The staff provided **CACERES** with a key to the back door used by law enforcement, along with the code to the facility's alarm system.

During 2007 and 2008, **CACERES'** dog then had $2,781.25 worth of surgery, care, and boarding. Eventually, after the last boarding and surgery, **CACERES** never picked up the dog. The Animal Hospital eventually called the FBI and learned that **CACERES**, still using the name "Allen Truesdale," was not a federal agent. Eighty-five days of boarding later, the dog was turned over to animal control.

Defendant's Initials _AC_

On April 16, 2011, **CACERES**, now identifying himself as "Allan Caceres," entered the clinic and requested care for a puppy, but did not identify himself as law enforcement. Because the puppy was a rare breed, the staff took a picture of **CACERES** and the puppy. **CACERES** then left out the front door. A few minutes later, the staff saw **CACERES** at the back door where law enforcement enter. When asked if he needed help, **CACERES** stated that, "I'm just checking to see if my key still works." The staff assumed he was law enforcement and went on their way.

On April 17, 2011, **CACERES** used his key to enter the rear law enforcement door again. He explained to staff that he wanted to "check on his dog." A few minutes after **CACERES** left, an employee realized that **CACERES** was the same man that identified himself as Truesdale in 2007, and the employee called OPD. When OPD responded, OPD was able to compare the driver's license numbers **CACERES** provided in 2007 and 2011 on paperwork registering his dog as a patient with the Animal Hospital, and learned that the drivers license photographs were of the same person, **CACERES**.

On April 18, 2011, **CACERES** returned to get his dog, and the employee confronted him as being the same person from 2007 who had not paid his bill for veterinary care and boarding, and then abandoned his dog. **CACERES** then agreed to pay back the animal hospital for debt incurred in 2007 and 2008, and signed a notarized document prepared by the employee with a re-payment schedule. The employee also obtained a copy of **CACERES'** driver's license.

Defendant's Initials _AC_

In later interviews, personnel working at the Animal Hosptial recognized **CACERES** as someone who, in 2007 and 2008, identified himself as a part of Homeland Security, specifically as a Federal Air Marshal working K-9 at Orlando International Airport. According to personnel working at the Animal Hospital, **CACERES** also wore law enforcement-type clothing, including shirts that said "K-9" and "Homeland Security," a black semi-automatic handgun on a gun belt, and a lanyard that held an identification card and a badge.

Defendant's Initials _AC_